SALT LAKE ON TRACK, a Utah nonprofit corporation, and L. Scott Nelson, individually and on behalf of others similarly situated, Plaintiffs and Appellants,

v.

SALT LAKE CITY, a municipal corporation; Utah Transit Authority, a public agency; DeeDee Corradini, in her representative capacity as Mayor of Salt Lake City; Kendrick D. Cowley, Salt Lake City Recorder, et al., Defendants and Appellees.

No. 970188.

Supreme Court of Utah.

June 9, 1997.

Kevin Egan Anderson, Robert S. Campbell, Salt Lake City, for plaintiffs and appellants.

Roger F. Cutler, Salt Lake City, for Salt Lake City defendants and appellees.

Randall S. Feil, Gordon L. Roberts, Salt Lake City, for UTA.

ZIMMERMAN, Chief Justice:

Salt Lake On Track and L. Scott Nelson ("SLOT") appeal from an order and final judgment of dismissal rejecting their effort to compel the Salt Lake City Recorder, Kendrick Cowley, ("City Recorder") to accept for filing a purported initiative petition that reads as follows:

> The Salt Lake City Mayor and Salt Lake City Council shall not obligate the people of Salt Lake City, by ordinance or otherwise, to an agreement with the Utah Transit Authority regarding the establishment of a permanent light railroad line along Main Street within the corporate limits of Salt Lake City between South Temple Street on the north and 700 South Street on the south.

The district court held that (i) under section 10–8–14 of the Utah Code, and under the Interlocal Cooperation Act, sections 11–13–1 to –37 of the Code, Salt Lake City did not need to take legislative action and pass an ordinance giving a franchise to the Utah Transit Authority ("UTA") in order to authorize it to construct and operate a light rail system on Main Street; (ii) the City Recorder properly rejected the initiative petition because the Interlocal Cooperation Act expressly precludes a referendum challenging the mass transit agreements between UTA and Salt Lake City, see Utah Code Ann. § 11–13–20(2); and (iii) there was no conflict between the Main Street alignment of light rail and the Salt Lake City transportation master plan.

This court permitted an accelerated briefing and argument schedule at SLOT's request so that this appeal could be disposed of expeditiously. Also, in recognition of the importance of quickly settling the questions presented, we today issue a brief memorandum of decision disposing of the contentions of the parties. This memorandum of decision is intended for publication and will not be followed by any other opinion.

■ SLOT's first contention is that under section 10–8–33 of the Code, Salt Lake City has no power to permit UTA to place light rail on Salt Lake City streets unless it first grants UTA a "franchise" by ordinance. The court rejects this contention. The second clause of section 10–8–33, which has been on the books virtually since statehood, provides that a city "may by ordinance grant franchises to railroad and street railroad companies ... to lay, maintain and operate in any street ... tracks [for public transit]." That section empowers a city to grant a franchise for a railroad on a city street. However, it is not the exclusive means by which a city may permit a third party to install a railroad on city streets. An alternative is provided under the Utah Public Transit District Act, sections 17A–2–1101 to –1199.51 of the Code, the Salt Lake City ordinance adopted in 1969 pursuant to this statute, and the Interlocal Cooperation Act, sections 11–13–1 to –37 of the Utah Code. These statutes and ordinances were enacted in recent decades and set up a comprehensive scheme for creating mass transit systems that may serve a number of units of local government. Under this scheme, a city may grant "use rights" on city streets to UTA for rapid transit. See Utah Code Ann. § 10–8–14 ("[A city] may construct, maintain and operate ... public transportation systems, or authorize the construction, maintenance and operation of the same by others."); see also id. § 10–8–8 ("[A city] may lay out, establish, open, alter, widen, narrow, extend, grade, pave or otherwise improve streets."). No ordinance is necessary to grant such rights; a "resolution" is sufficient. See Utah Code Ann. § 11–13–5. These use rights are sufficient to permit the construction of, inter alia, a light railway on city streets. Salt Lake City has chosen to exercise the power given it by these newer statutes to authorize the construction of light rail on Main Street rather than granting a franchise under section 10–8–33. That alternative is within the discretion of Salt Lake City.

■ SLOT's second contention is that the City Recorder is without authority to reject any initiative or referendum presented for circulation and was required to certify the petition for circulation. We reject that con-

tention. Our case law, including *White v. Welling,* 89 Utah 335, 57 P.2d 703, 705 (1936), and *Keigley v. Bench,* 97 Utah 69, 89 P.2d 480, 481–82 (1939), indicates that a public official to whom an initiative or referendum petition is presented for filing does have the authority to reject that petition if, in fact, it is legally insufficient or is directed to a matter that is not subject to an initiative or referendum. *Cf.* Utah Code Ann. § 20A–7–202(5) (codifying statute passed after decisions in *White* and *Keigley,* and granting lieutenant governor power to reject initiative petition if proposed law is unconstitutional, is nonsensical, or could not become law if passed). In the present case, the subject of the proposed initiative is not an appropriate one. The Interlocal Cooperation Act, section 11–13–20(2) of the Code, specifically provides that actions taken pursuant to that statute and authorized by resolution may not be the subject of a referendum petition. The petition in question here proposes, in fact, a referendum on the city's resolution to permit a Main Street alignment of light rail. The fact that SLOT chose to label the petition an "initiative" does not change its essential nature.

SLOT's third contention is that the Salt Lake City transportation master plan, which designates Main Street as "arterial," is inconsistent with Salt Lake City's decision to permit UTA to place light rail on Main Street. SLOT contends, therefore, that the master plan must be amended before the City can enter into an agreement to put light rail on Main Street. We reject this contention. It is true that the Salt Lake City transportation master plan quite plainly designates Main Street as arterial. However, it also describes Main Street as the location for light rail. This master plan's designation of Main Street as arterial does not conflict with the presence of light rail on Main Street. Contrary to SLOT's argument, the term "arterial" is not a narrow one. We note that there are only three designations in the master plan for streets. Streets may be "arterial," "collector," or "residential." Plainly, the meaning given "arterial" in this master plan does not preclude Main Street's having only one lane in each direction following construction of the light rail system. A number of other streets similarly labeled "arterial" in the master plan also have only one lane in each direction.

For the foregoing reasons, the decision of the trial court is affirmed.

HOWE, DURHAM and RUSSON, JJ., concur.

STEWART, Associate C.J., does not participate herein.