STATE of Utah, Plaintiff and Appellee,

v.

David A. GALLEGOS, Defendant
and Appellant.

Court of Appeals of Utah.

Oct. 29, 1998.

Michael J. Boyle, Ogden, for Defendant and Appellant.

Jan Graham, Marian Decker, and Norman E. Plate, Salt Lake City, for Plaintiff and Appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

GREENWOOD, Judge:

Defendant David A. Gallegos appeals his convictions for possession of methamphetamine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2)(i) (1996); possession of cocaine, a third degree felony, in violation of Utah Code Ann. § 58–37–8(2) (1996); and possession of drug paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58–37a–5(1) (1996). We conclude the convictions were based on evidence obtained in an unlawful search and that defendant's counsel provided ineffective assistance by failing to object to admission of this evidence at trial, and remand the case to the trial court for a determination of whether defendant has standing to assert his Fourth Amendment unreasonable search claim.

## BACKGROUND

In mid-June 1995, Deputies Zwemke and Hartley learned that there was an outstanding arrest warrant for defendant for burglary. They received information from a confidential informant that defendant was staying in an apartment rented by Corinna Pasalles. On June 29, the deputies approached the apartment and noticed that a car known to be used by defendant was parked nearby. After calling for back up, the deputies entered the apartment and found a male and female on the couch in the front living room. The deputies then proceeded to a back bedroom where they found defendant hidden in a hole cut into the floor, covered by carpet. With guns drawn, they ordered defendant out of the hole and to put his hands in the air. As defendant crawled out of the hole, he reached his right hand between the mattress and box spring of a bed about two feet away. The deputies again told defendant to raise his hands. After a few moments, defendant complied. Deputy Zwemke then took defendant into custody and handcuffed him. In a search of defendant's person, Deputy Zwemke found a syringe in defendant's left front pocket. Deputy Zwemke then removed defendant to the apartment's living room. At about the same time, Deputy Hartley searched between the mattresses where defendant had put his hand and found a fully loaded .22 caliber pistol. After another officer arrived to watch defendant, Hartley and Zwemke went back into the bedroom and conducted a further search to ensure there were no additional unsecured weapons in that room. Ms. Pasalles was in the bedroom at the time. During this search, Deputy Zwemke noticed a purple tin on a shelf in the closet of the bedroom. Deputy Zwemke inspected the tin's contents and found five small plastic baggies, two containing cocaine residue and two containing methamphetamine residue. The tin also contained a scale-like object, two razor blades, and copies of defendant's birth certificate, social security card, and Utah identification card.

Defendant was charged with possession of a dangerous weapon by a convicted person, possession of methamphetamine, possession of cocaine, and possession of drug paraphernalia. At the preliminary hearing, Deputies Hartley and Zwemke explained the circumstances under which they had located defendant and found the gun between the mattresses. Deputy Zwemke explained that after the gun was found, he returned to the bedroom "to assist to locate any other weapons that might be concealed within the apartment in the bedroom area." While searching, he "found a small purple metal tin container in the closet which had assorted paraphernalia items and also five small plastic baggies with a white powdery salmon colored substance," and a copy of defendant's birth certificate. The tin was about three inches by four inches by two inches, and had no lid. "I was just making sure there wasn't any guns or anything." Defendant was handcuffed and in the front room at the time. Ms. Pasalles was standing behind Deputy Zwemke when he found the tin.

Defendant filed a motion to suppress both the gun and the evidence found in the purple tin. Although the State at that time challenged defendant's standing to assert a Fourth Amendment protection in the searched bedroom, the parties agreed to let the trial court first determine whether the search was reasonable, since a determination on that point might render the standing issue moot.

Evidence offered on the motion to suppress consisted solely of the tape recording of the preliminary hearing. After listening to the tape, the trial court ruled orally

> that the statutory interpretation under section [77–7–9 of the Utah Code], the about his person means the area that is within the defendant's reach at the time of the arrest, not the search. And that it may be searched incident to an arrest to ascertain the existence of a weapon. Therefore, the court denies the motion to suppress the finding of the weapon.

> Court also rules that the drugs found in the tin were in plain view of the officer who entered lawfully. And that the evidence was clearly incriminating on its face. For that reason, that evidence also is not suppressed.

A jury trial began December 18, 1995.

At trial, Ms. Pasalles testified that the bedroom in which defendant was found was approximately eleven feet wide by twenty feet long. Deputy Zwemke again explained that, once the gun was found, he went back into the bedroom to make sure that there were no more unsecured weapons in that area. "[J]ust looking in the closet area, up on a high shelf in the closet, I found a purple tin." Zwemke stated that he then picked up the tin to see what was in it:

Q. Okay. And you actually had to pick it up before you could look inside of it?

A. Well, yeah. It was kind of up on a shelf. I couldn't—wasn't tall enough to see up on top there.

Q. Okay. So when you picked it up, you could feel its weight.

A. Well, yeah.

Q. Did it feel like it had any weapons in it?

A. I didn't know until I looked.

Q. Okay. Didn't feel heavy enough to have a gun in it.

A. Probably not heavy enough for a gun, no.

Q. Wasn't big enough to put a very big knife in it, right?

A. No, but—

Q. Okay. Now, after you picked it up and you looked inside of it, what did you do with the box?

A. After I looked, when I grabbed it, I looked down and looked to see what was in there, the contents, and that's when I noticed these little baggies that were laying in the bottom of the box. . . .

The jury found defendant guilty of the drug-related charges, but not guilty of possession of a dangerous weapon by a convicted person. This appeal followed.

## ISSUES AND STANDARDS OF REVIEW

Defendant's primary contention on appeal is that the trial court should have excluded drug evidence found in the purple tin as evidence resulting from an unreasonable search. Specifically, defendant argues that his trial counsel was ineffective for failing to renew his suppression motion when it became evident from Deputy Zwemke's trial testimony that the tin's contents were not immediately obvious to the detective and thus were not, in fact, in his plain view.[1] Defendant asserts his counsel's deficient performance prejudiced him because the evidence found in the tin was the only evidence supporting his drug possession convictions, and the evidence was not otherwise admissible since the State failed to provide sufficient facts to demonstrate that the search was reasonable as a search incident to arrest, the only alternative theory argued by the State.

"When, as in this case, the claim of ineffective assistance is raised for the first time on

---

1. Because we conclude that defendant's ineffective assistance claim is dispositive of his appeal, we do not address whether the trial court committed plain error in failing to sua sponte revisit its suppression ruling upon hearing Detective Zwemke's trial testimony.

appeal, we resolve the issue as a matter of law." *State v. Strain*, 885 P.2d 810, 814 (Utah Ct.App.1994) (footnote omitted); *see also State v. Callahan*, 866 P.2d 590, 593 (Utah Ct.App.1993).

## ANALYSIS

To bring a successful ineffective assistance of counsel claim, "a defendant must show that trial counsel's performance was deficient in that it 'fell below an objective standard of reasonableness,' and that the deficient performance prejudiced the outcome of the trial." *State v. Garrett*, 849 P.2d 578, 579 (Utah Ct.App.1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).

### I. Deficient Performance

Defendant argues that his trial counsel was ineffective for failing to renew his motion to suppress the drug evidence found in the tin when it became obvious during trial that the tin evidence was not in Detective Zwemke's plain view prior to the detective's taking the tin from the closet shelf.

■ To establish that counsel's performance was deficient, "the defendant must overcome the presumption that under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.*(quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065 (citation omitted)). Although "'failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance,'" *Parsons v. Barnes*, 871 P.2d 516, 525 (Utah 1994) (quoting *Codianna v. Morris*, 660 P.2d 1101, 1109 (Utah 1983)), "where a defendant can show that there was no conceivable legitimate tactical basis for counsel's deficient actions, the first prong of *Strickland* is satisfied." *State v. Snyder*, 860 P.2d 351, 359 (Utah Ct.App.1993) (finding no tactical basis for failure to file motion to suppress damaging statements within time required under statute).

At the preliminary hearing, Deputy Zwemke testified that, after Deputy Hartley found a gun between the mattresses in the bedroom and brought the gun into the living room to show the other officers, Zwemke returned to the bedroom to help locate any other weapons that might be concealed in the bedroom. While searching, Deputy Zwemke "found a small purple metal tin container in the closet which had assorted paraphernalia items and also five small plastic baggies with a white powdery salmon colored substance." Deputy Zwemke explained that the tin was about three inches by four inches by two inches, and that it had no lid. Based on this evidence, the trial court ruled that the evidence in the tin was admissible under the plain view exception to the warrant requirement.

At trial, Deputy Zwemke admitted that the tin's contents were not actually visible to him before he removed the container from the shelf. He stated that, "It was kind of up on a shelf. I couldn't—wasn't tall enough to see up on top there.... After I looked, when I grabbed it, I looked down and looked to see what was in there, the contents...." Despite this revelation, defense counsel failed to move the court to reconsider its earlier suppression ruling.

"Warrantless searches are unreasonable per se unless they fall within a recognized exception to the warrant requirement of the fourth amendment." *State v. Holmes*, 774 P.2d 506, 510 (Utah Ct.App.1989). Evidence in an officer's plain view is one such exception. *See State v. Romero*, 660 P.2d 715, 718 (Utah 1983). However, to establish that the plain view exception applies, the State must demonstrate that: "(1) the officer is lawfully present where the search ... occur[s]; (2) the evidence is in plain view; and (3) the evidence is clearly incriminating." *Romero*, 660 P.2d at 718; *see also Holmes*, 774 P.2d at 510.[2] Evidence is "clearly incriminating" if the officer observing it has "'probable cause to associate the property with criminal activity.'" *Id.* at 510 (quoting *State v. Kelly*, 718

---

2. Although defendant argued in his brief that the trial court erred in denying his pretrial Motion to Suppress because Deputy Zwemke's presence when he viewed the tin was unlawful, he waived that argument during oral argument. Thus, we do not address whether the trial court's pretrial ruling was proper.

P.2d 385, 390 (Utah 1986) (quoting *Payton v. New York,* 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980))); *see also Arizona v. Hicks,* 480 U.S. 321, 326, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987).

In *Hicks,* officers entered an apartment "to search for the shooter, for other victims, and for weapons" after a gunshot from that apartment injured a person below. *Hicks,* 480 U.S. at 323, 107 S.Ct. at 1152. While conducting the search, one of the officers noticed stereo equipment that he suspected was stolen. The officer moved the equipment to read the serial numbers and seized a turntable after confirming by radio that it had been stolen. *See id.* The Court held that the officer's "moving of the equipment . . . constitute[d] a 'search' separate and apart from the search for the shooter, victims, and weapons that was the lawful objective of his entry into the apartment." *Id.* at 324–25, 107 S.Ct. at 1152. Although mere inspection of the equipment would not have constituted a new search, "taking action, unrelated to the objectives of the authorized intrusion, which exposed to view concealed portions of the apartment or its contents, did produce a new invasion of respondent's privacy unjustified by the exigent circumstances that validated the entry." *Id.* at 325, 107 S.Ct. at 1152. Such action, the Court held, must be supported by probable cause to believe the property seen in plain view is either a weapon or evidence of a crime. *See id.* at 326, 107 S.Ct. at 1153. Probable cause, the Court held, was not established in this case. *See id.,* 107 S.Ct. at 1153.

■ We believe *Hicks* is dispositive of whether the tin's contents were admissible under the "plain view" exception to the warrant requirement. Deputy Zwemke clearly testified at trial that the tin's incriminating contents were not obvious to him before he removed the tin from the closet shelf. Furthermore, nothing in his testimony demonstrates that he had probable cause to believe the tin, as originally observed, contained either a weapon or evidence of a crime. *See*

---

*id.* at 326, 107 S.Ct. at 1153.[3] Thus, under *Hicks,* the removal of the tin by Deputy Zwemke could not be justified under the "plain view" exception to the warrant requirement and any evidence gained by that action was not admissible under that exception. Trial counsel's failure to renew the suppression motion after the detective's testimony, then, constituted deficient performance.

## II. Prejudicial Error

Defendant asserts that because the evidence in the tin was the sole evidence supporting his convictions, his counsel's failure to renew his suppression motion at trial was prejudicial. Although the State contends that counsel's failure was not prejudicial because the evidence was admissible under the "search incident to arrest" exception to the warrant requirement, defendant counters first that section 77-7-9 of the Utah Code severely limits the scope of a search incident to arrest and that Zwemke's search of the tin exceeded that scope. Alternatively, defendant contends that the search of the tin, in any case, exceeded the scope of a search incident to arrest, as defined in case law, because nothing in the record demonstrates that the tin was within defendant's immediate control at the time of his arrest.

To establish the prejudice prong of an ineffective assistance claim, the defendant must show that, "but for the deficient representation, there is a 'reasonable probability' that the result would have been different." *State v. Hall,* 946 P.2d 712, 719 (Utah Ct. App.1997) (citation omitted), *cert. denied,* 953 P.2d 449 (Utah 1998).

### 1. Section 77-7-9

■ Section 77-7-9 of the Utah Code provides that "[a]ny person making an arrest may seize from the person arrested all weapons which he may have on or about his person." Utah Code Ann. § 77-7-9 (1995). Defendant argues that the "on or about" language in the statute restricts the area

---

**3.** Deputy Zwemke never testified, for instance, that any special knowledge on his part led him to believe that drugs would be present in the tin. *See United States v. Wysocki,* 457 F.2d 1155, 1160 (5th Cir.1972) (finding search of box reasonable as search incident to arrest where officer "believ[ed] in accordance with his long experience that the box contained a gun").

which a person may search incident to an arrest to only that area—approximately ten inches—definitively within the arrestee's reach at the time of the search. We believe defendant's focus on the statute's "on or about" language, rather than on the permissive and non-exclusive nature of the statute, is misguided.

Under traditional rules of statutory construction, " 'a statutory term should be interpreted and applied according to its usually accepted meaning, where the ordinary meaning of the term results in an application that is neither unreasonably confused, inoperable, nor in blatant contradiction of the express purpose of the statute.' " *Bonneville Int'l Corp. v. State Tax Comm'n*, 858 P.2d 1045, 1048 (Utah Ct.App.1993) (internal brackets omitted) (quoting *Morton Int'l Inc. v. State Tax Comm'n*, 814 P.2d 581, 590 (Utah 1991)). Furthermore, the term "may" is generally construed to be "permissive and not mandatory" and is generally not interpreted to limit options, but, rather, to clearly define some of those options. *See Salt Lake On Track v. Salt Lake City*, 939 P.2d 680, 681 (Utah 1997) (noting statute providing city " 'may by ordinance grant franchises to railroad and street railroad companies ...' empowers a city to grant a franchise [but] is not the exclusive means by which a city may permit a third party to install a railroad on city streets"); *Banberry Dev. Corp. v. South Jordan City*, 631 P.2d 899, 901 (Utah 1981) (holding statute providing "city *may* collect water fees in the same manner as ... for the collection of sewer fees ... is permissive, not mandatory" and "poses no statutory prohibition against the collection of a water connection fee" in different manner); *Dehm v. Dehm*, 545 P.2d 525, 528 (Utah 1976) (holding statute providing "obligee *may* enforce his right of *support* against the obligor [is] permissive and not mandatory and does not foreclose the right of a person to enforce the duty of support set forth in the act by any other means provided by law"); *State v. Suarez*, 793 P.2d 934, 937 (Utah Ct.App.1990) (holding statute providing " 'court *may* require the clerk of the court to summon a sufficient number of trial jurors selected at random by the court from the qualified jury wheel' ... is couched in permissive terms" and although "court *may*

direct the clerk ... to summon jurors at random from the jury wheel, the statute does not require it to do so").

We conclude that section 77–7–9 merely sets forth one possible search and seizure which an arresting person *may* make of an arrestee at the time of arrest. The statutory language is permissive and nothing on its face necessarily restricts the range of possible searches available to the arresting person to only that one set forth in the statute. We thus reject defendant's argument that section 77–7–9 precluded the search of the tin.

## 2. Search Incident to Arrest

"A contemporaneous, warrantless search of the area within an arrestee's immediate control is permissible for the purpose of recovering weapons the arrestee might reach, or to prevent concealment or destruction of evidence of the crime." *State v. Harrison*, 805 P.2d 769, 784 (Utah Ct.App.1991) (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)); *see also State v. Harris*, 671 P.2d 175, 180 (Utah 1983). However, " 'the scope of such a search has been narrowly drawn and carefully delineated to accommodate only those interests it was created to serve.' " *United States v. Bennett*, 908 F.2d 189, 193 (7th Cir.1990) (citations omitted); *see also New York v. Belton*, 453 U.S. 454, 458, 101 S.Ct. 2860, 2862, 69 L.Ed.2d 768 (1981) (stating scope of search must be " 'strictly tied to and justified by' circumstances which rendered its initiation permissible" (citations omitted)).

[A]n arresting officer may, without a warrant, lawfully search the area surrounding the person he or she is arresting if: (1) the arrest is lawful, (2) the search is of the area within the arrestee's immediate control, and (3) the search is conducted contemporaneously to the arrest[.] In other words, the search must be conducted pursuant to a lawful arrest and cannot be " 'remote in time or place from the arrest.' "

*State v. Giron*, 943 P.2d 1114, 1117–18 (Utah Ct.App.1997) (quoting *Chimel*, 395 U.S. at 764, 89 S.Ct. at 2040) (other citations omitted); *see also Vale v. Louisiana*, 399 U.S. 30,

33, 90 S.Ct. 1969, 1971, 26 L.Ed.2d 409 (1970) ("A search may be incidental to an arrest 'only if it is substantially contemporaneous with the arrest and is confined to the *immediate* vicinity of the arrest.'" (citations omitted)). Still, "[i]n construing the area of 'immediate control,' ... doubt about the arrestee's ability to access weapons or evidence in a particular area because of distance, or police restraint, does not [necessarily] prohibit police from properly searching that area." *State v. Moreno,* 910 P.2d 1245, 1247 (Utah Ct.App.1996), *cert. denied,* 916 P.2d 909 (Utah 1996); *see also Bennett,* 908 F.2d at 193 (noting "'[c]ustodial arrests are often dangerous; the police must act decisively and cannot be expected to make punctilious judgments regarding what is within and what is just beyond the arrestee's grasp'" (citation omitted)).

■ Thus, the reasonableness of a search must be determined from "the totality of the circumstances," with consideration given to the following factors:

(1) "[w]hether or not the arrestee was placed in some sort of restraints"; (2) "[t]he position of the officer vis-a-vis the defendant in relation to the place searched"; (3) "[t]he ease or difficulty of gaining access" to the searched area or item; and (4) "[t]he number of officers present in relation to the number of arrestees or other persons."

*State v. Wells,* 928 P.2d 386, 391 (Utah Ct. App.1996) (footnote omitted) (quoting Wayne R. LaFave, *Search and Seizure* § 6.3(c), at 306–07 (3d ed.1996)), *aff'd,* 939 P.2d 1204 (Utah 1997).

■ Defendant asserts that the State failed to demonstrate that the tin observed by Detective Zwemke was sufficiently within defendant's immediate control at the time of his arrest to justify searching the tin as a search incident to arrest.[4] The State coun-

ters that the search of the room in which a defendant is arrested is per se a reasonable search incident to arrest. Rejecting the State's contention as too broad, we hold that the State must demonstrate that the area searched was reasonably within defendant's control at the time of his arrest before evidence obtained in that search can be admitted under the "search incident to arrest" exception to the warrant requirement.

In *Chimel,* the Court stated:

There is ample justification ... for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs— *or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself.*

395 U.S. at 763, 89 S.Ct. at 2040 (1969) (emphasis added); *see also Young v. United States,* 670 A.2d 903, 909 (D.C.1996) (upholding search where "search was limited ... to the two places where the officers had concrete reason to believe weapons might be" and "there was no general rummaging through drawers or closets"). "No consideration relevant to the Fourth Amendment suggests any point of rational limitation, once the search is allowed to go beyond the area from which the person arrested might obtain weapons or evidentiary items." *Chimel,* 395 U.S. at 766, 89 S.Ct. at 2041.

■ Against this legal background, we conclude that the record in this case does not contain sufficient factual information to conclude that the search of the tin was reasonable as a search incident to arrest. *See*

---

4. Defendant also asserts that, once he was arrested and removed from the bedroom, any further search of the bedroom was improper per se because nothing therein was any longer within his reach. We reject defendant's argument. *See Harrison,* 805 P.2d at 785 n. 29 ("Police restraint and physical removal of the arrestee, then, while limiting the arrestee's ability to actually reach into a particular area, does not automatically prohibit police from searching that area.");

*Wells,* 928 P.2d at 391 n. 6 (stating "being placed in restraints is not dispositive" but "is one factor to be considered"). *But see State v. Hygh,* 711 P.2d 264, 272 (Utah 1985) (Zimmerman, J., joined by Durham, J., concurring separately) ("Once the threat that the suspect will injure the officers with concealed weapons or will destroy evidence is gone, there is no persuasive reason why the officers cannot take the time to secure a warrant.").

*Wells,* 928 P.2d at 389 (holding State has burden of showing exception to prohibition against warrantless searches applies); *Harrison,* 805 P.2d at 784 n. 26 (noting "our approval of the practice in many jurisdictions of requiring specific fact findings to support a trial court's decision on a motion to suppress" and holding that "[w]here specific findings are required, failure to enter such findings is reversible error unless the facts in the record 'are clear, uncontroverted, and capable of supporting only a finding in favor of the judgment'" (quoting *Kinkella v. Baugh,* 660 P.2d 233, 236 (Utah 1983))).

The only evidence produced at the preliminary hearing or trial concerning the closet's location was that the bedroom in which defendant was arrested was approximately eleven feet by twenty feet, and that the hole in which defendant was found was located at the southeast corner of the bedroom, the door was located at the southwest corner, and the closet was located north of the door. There is no evidence addressing the distance between defendant and the closet at the time of defendant's arrest or indicating whether the tin was accessible to defendant from where he was arrested. Indeed, the evidence presented was that the officer could not see into the tin and did not believe it contained a weapon nor did he have any reason to think it contained evidence of a crime.

We thus believe the case at bar is similar to the *Wells* decision. In that case, the court reviewed a search of a jacket liner when the defendant was not close to the jacket but his girlfriend, who was also arrested, had indicated there was cocaine in the liner. Al-

though the court recognized that certain cases imply that searches conducted in the room in which a defendant is arrested are reasonable, the court found it troublesome that the officer's testimony did not indicate how far defendant was from the items seized when he was arrested and handcuffed. *See Wells,* 928 P.2d at 391. "More importantly, the officer's testimony never defines 'several feet' more accurately.... Several feet could mean three or twenty." *Id.* The court also found that the evidence was not easily accessible to defendant—it was in the lining of a jacket—at the time of arrest. *See id.* "The State simply has not met its burden of proving ... that defendant was or anyone else would be within a range close enough to obtain possession of the jacket and destroy the evidence or that the officers were reasonably checking for weapons." *Id.*[5]

The facts of this case as contained in the trial record are equally insufficient. Therefore, we cannot conclude that the tin's contents were admissible under the "search incident to arrest" exception to the warrant requirement.

### 3. Harmless Error

Having determined that defendant's trial counsel performed deficiently in failing to renew his suppression motion at trial, and having determined that the tin evidence was not otherwise admissible under the "search incident to arrest" exception to the warrant requirement, we must now determine whether the admission of the tin evidence in this case was harmless beyond a reasonable doubt.[6] *See State v. Genovesi,* 909 P.2d 916,

---

**5.** Although the scope of a search incident to arrest appears to be greater where people other than the arrestee may gain access to weapons or evidence, case law generally requires some evidence that this concern was actually present before so extending the scope. *See, e.g., Harrison,* 805 P.2d at 785 (upholding search ten feet away from arrestee at time he was restrained, holding such distance "was sufficiently within [his] immediate control ... to permit its search incident to [his] arrest"; noting "separate safety concern also justified searching the diaper bag at the arrest scene" where "there was no way to secure it at the scene pending the obtaining of a warrant to search it" because someone would eventually have to get into bag to take care of child); *Bennett,* 908 F.2d at 193 (holding search

of armed robbery defendants' suitcases and between mattresses of hotel room proper where, at time of arrest, "officers were aware that the defendants had used several different weapons during the robberies and that one weapon, a loaded revolver, was in plain view"; concluding "officers reasonably feared that someone else was going to come to the room who knew where the other weapons were or that the defendants would position themselves to take advantage of any hidden weapons or instrumentalities").

**6.** We note the State did not address the question of harmless error in its briefing. We therefore do not have the advantage of the State's analysis to aid us.

922 (Utah Ct.App.1995). In making this determination, we consider "the importance of the evidence to the prosecution's case, whether the evidence was cumulative, and, of course, the overall strength of the prosecution's case." *Id.* at 923.

█ In reviewing the record, we note that the evidence supporting defendant's conviction for possession of drug paraphernalia included not only the paraphernalia found in the tin but also the syringe found in defendant's pants pocket at the time of his arrest. Although the tin evidence may have been cumulative on the paraphernalia charge, we are not persuaded beyond a reasonable doubt that the jury would have convicted without it—consequently its admission was harmful.[7]

█ As to defendant's drug possession convictions, however, the only substantive evidence supporting those convictions was the tin evidence obtained from the unreasonable search. Because the evidence found in the tin was essential to the State's case on those charges, admission of that evidence was obviously prejudicial to defendant, provided he has standing to assert any Fourth Amendment protection in Ms. Pasalles' bedroom. Thus, defense counsel's failure to move for exclusion of the evidence constituted ineffective assistance of counsel.

### CONCLUSION

We conclude that the search of the tin found on a high shelf in the closet of the room in which defendant was arrested constituted an unreasonable search under the facts of this case, and that the evidence seized during that search was thus inadmissible under either the "plain view" or "search incident to arrest" exceptions to the warrant requirement. Furthermore, because that evidence was necessary to establish defendant's paraphernalia and drug possession charges, we conclude that defense counsel's failure to renew his suppression motion after Deputy Zwemke's trial testimony constituted ineffective assistance of counsel.

However, we do not at this point vacate defendant's convictions. Rather, we remand this case to the trial court to address the State's assertion made below that defendant lacks standing to assert any Fourth Amendment protection in Ms. Pasalles' bedroom. If, after a hearing, the trial court determines that defendant does have such standing, we direct the trial court to vacate defendant's convictions.[8]

JACKSON, J., concurs.

BENCH, J., concurs in the result.

---

7. According to the trial record, the syringe was not tested for controlled substances and the State conceded in closing argument that syringes can be purchased "for legitimate uses."

8. The parties agreed the standing issue could be addressed if the trial court granted defendant's Motion to Suppress or if defendant prevailed on appeal from the denial of the Motion to Suppress.