STATE of Utah, Plaintiff and Respondent,

v.

Michelle Davis PURSIFULL, Defendant and Appellant.

No. 860259–CA.

Court of Appeals of Utah.

March 15, 1988.

Phil L. Hansen, Hansen & Hansen, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., for the State.

Jean Marlor (interested party), Adult Probation and Parole, Salt Lake City.

Before JACKSON, ORME and DAVIDSON, JJ.

## OPINION

JACKSON, Judge:

Defendant appeals her jury conviction for unlawful possession of a controlled substance with intent to distribute for value, a third-degree felony, in violation of Utah Code Ann. § 58–37–8(1)(a)(ii) (1986). We affirm.

Defendant's motion to suppress evidence seized in two searches of her residence, based on the following stipulated facts,[1] was denied. At 7:43 a.m. on April 14, 1986, police officers were notified that a man had been shot at defendant's residence. The officers who responded to the call within several minutes found a man lying in the driveway being treated by emergency medical personnel for a fatal gunshot wound. An unexpended cartridge was found next to his body. There was blood trailing to and from the front door and the front porch, and the chain lock on the front door had been broken off. Upon arriving at the scene, Officer Carroll questioned defendant while other officers conducted a warrantless search of the premises.[2]

1. Contrary to the explicit provisions in R. Utah Ct.App. 24(a)(7) and (e), the appellate brief filed by defendant's counsel does not contain appropriate citations to the record for the stipulated facts that formed the basis for the ruling on her motion to suppress. Although this failure could provide an independent basis for affirming the trial court's determination, *State v. Tucker,* 657 P.2d 755, 756–57 (Utah 1982); *Koulis v. Standard Oil Co.,* 746 P.2d 1182, 1184 (Utah App. 1987), we choose instead to reach the merits of defendant's claim on appeal. More disturbing is counsel's irrelevant recitation of "facts" that are outside those stipulated to by the parties at the suppression hearing, as well as "facts" for which there is no apparent basis in the record. Such misrepresentations of the material facts of a case violate our rules, *e.g.,* R. Utah Ct.App. 24(k), and the Rules of Professional Conduct, *e.g.,* Rule 3.3, recently adopted by the Utah Supreme Court, effective January 1, 1988.

2. According to the stipulated facts, Officer Carroll was told by defendant that she lived in the residence with her child and her boyfriend, who was the shooting victim. The boyfriend had responded to a knock on their door earlier that morning, and she had heard a thud. Defendant

During the warrantless search, Officer Wardle opened a closet door next to the master bedroom, smelled marijuana, and observed three large white garbage bags. The top of one bag was open; he saw a leafy substance that appeared to be marijuana. The officer closed the door and reported his observations to the detective in charge of the shooting investigation. The information was relayed to narcotics detectives, who used it to obtain a warrant for a full search of the residence.

■ A single substantive issue has been presented on appeal: Did exigent circumstances justify the initial warrantless entry and search of Pursifull's residence? Defendant, relying only on the fourth amendment to the United States Constitution,[3] contends that the warrantless entry and search should not have been made. Respondent argues that the trial court properly found that the warrantless search, conducted to secure the premises and discover other possible victims or suspects, was justified under the exigent circumstances presented.

■ Because the trial court's determination proceeded from stipulated facts, we must review it as a question of law, examining the facts de novo and affirming only if convinced of its correctness. *Sacramento Baseball Club, Inc. v. Great Northern Baseball Co.*, 748 P.2d 1058, 1060 (Utah 1987). *Cf. State v. Ashe*, 745 P.2d 1255 (Utah 1987) (where trial court must weigh credibility and resolve factual disputes, the findings underlying its grant or denial of motion to suppress are reviewed by appellate court under "clearly erroneous" standard).

The fourth amendment prohibits all unreasonable searches and seizures, and

> it is a cardinal principle that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."

*Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)). One such recognized exception is presented by an emergency in which "the exigencies of the situation" make the needs of law enforcement so compelling that the warrantless search is objectively reasonable under the fourth amendment. *Id.* at 394, 98 S.Ct. at 2414; *McDonald v. United States*, 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153 (1948).

*Mincey* involved a narcotics investigation that turned into a shootout and resulting homicide prosecution. Here, we have a homicide investigation that resulted in a narcotics prosecution. Immediately after the *Mincey* shootout, in which one agent was fatally injured, the narcotics agents looked quickly about the apartment for victims other than the eventual defendant. They found one wounded person *in a bedroom closet* and another in the living room. Their search then ceased. *Mincey*, 437 U.S. at 388, 98 S.Ct. at 2411. Homicide detectives arrived within ten minutes of the shooting and proceeded to subject the apartment to an "exhaustive and intrusive search" that lasted four days; no warrant was ever obtained. *Id.* at 388–89, 98 S.Ct. at 2411.

looked out a window and saw someone running down the street. She ran to the front room, where she learned that her boyfriend had been shot in the chest. She went back to the bedroom and called 911. When she returned to the front room, her boyfriend was not there; she soon found him lying in the driveway. Defendant held his head until medical personnel arrived. There is nothing in the stipulated facts to suggest that this information was conveyed to the other officers, including Wardle, either before or during their search of the premises for other victims or suspects. Even if the informa-

tion had been conveyed, the police would not have been required to believe defendant's version of what had happened.

**3.** Because defendant has not challenged the warrantless entry and search on state constitutional grounds, we address our analysis only to her claim under the federal provision. *State v. Ashe*, 745 P.2d 1255, 1257 n. 2 (Utah 1987); *State v. Dorsey*, 731 P.2d 1085, 1087 n. 2 (Utah 1986); *State v. Earl*, 716 P.2d 803, 805–06 (Utah 1986). *See* Utah Const. art. I, § 14.

In *Mincey*, the Court rejected the argument that every homicide scene, based solely on the nature and seriousness of the crime, presents exigent circumstances justifying a warrantless search. *Id.* at 392–93, 98 S.Ct. at 2413. Furthermore, the Court concluded in that case that there was no emergency threatening life or limb that could justify the second, four-day, warrantless search by the homicide detectives, which included opening dresser drawers and ripping up carpets. *Id.* at 393, 98 S.Ct. at 2413–14.

However, the Court approved of the first warrantless search to secure the *Mincey* premises and locate other possible victims or suspects—which included the opening of a closet door—based on the exigencies the officers faced. *Mincey* affirmed the right of police officers to conduct limited, warrantless entries and searches of premises in emergency situations, including those in which police officers (1) have a reasonable belief that a person within needs immediate assistance; or (2) promptly search the scene of a homicide for other victims or a killer on the premises. *Id.* at 392, 98 S.Ct. at 2413.

Here, the police were called to a shooting scene with a body outside and trails of blood leading back to the front door of the residence. They promptly looked about the premises for an assailant, accomplice, or another victim. During this cursory search, a closet door that could have concealed a person was opened and a bag of marijuana was observed in plain view. The warrantless "victim or suspect" search ended shortly thereafter and—unlike the detectives in *Mincey*—the narcotics detectives procured a warrant for a full search of the premises that ultimately yielded fifty-five pounds of marijuana, two balance scales, and two garbage bags filled with cut marijuana stems, seeds, and residue.

In light of the exigent circumstances the responding officers came upon at the Pursifull residence, their prompt warrantless entry and search to secure the premises was constitutionally permissible. *See People v. Hill*, 12 Cal.3d 731, 117 Cal.Rptr. 393, 528 P.2d 1, 19–21 (1974); *State v. Hardin*, 90

Nev. 10, 518 P.2d 151 (1974). In addition, its scope was "strictly circumscribed by the exigencies which justif[ied] its initiation." *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968). Officer Wardle's opening of the closet door, in search of hidden victims or hiding suspects, was reasonable under the circumstances. The contraband he saw while thus securing the premises was in plain view. At that point, no evidence was seized, and the warrantless search ended.

Defendant's motion to suppress was properly denied by the trial court. Her conviction is affirmed.

ORME and DAVIDSON, JJ., concur.