The STATE of Ohio, Appellee,

v.

CHEERS, Appellant.

[Cite as *State v. Cheers* (1992), 79 Ohio App.3d 322.]

Court of Appeals of Ohio,
Lucas County.

No. L–91–119.

Decided May 15, 1992.

*Anthony G. Pizza,* Prosecuting Attorney, and *Stewart Jones,* Assistant Prosecuting Attorney, for appellee.

*Jon D. Richardson,* for appellant.

*Per Curiam.*

This is an appeal from a judgment of the Lucas County Court of Common Pleas. Appellant, Michael Cheers, appeals his conviction and sentencing following a no contest plea on one count of drug abuse, with a prior offense of violence specification, in violation of R.C. 2925.11. Cheers is appealing the denial of his motion to suppress evidence seized by officers from his home. For the reasons that follow, we reverse the decision of the trial court.

The facts of this case are undisputed and are as follows. At approximately 6:00 p.m. on November 6, 1990, Sergeant Leland Pakusch and Officer Mark Mugler of the Toledo Police Department were called to 3024 Mulberry Street located in Toledo, Ohio. Sergeant Pakusch and Officer Mugler, along with several other officers of the Toledo Police Department, were responding to a disorderly conduct call involving a man with a shotgun in the street. Neighbors at the scene described the suspect as a black male with a red shirt.

Upon arriving at the Mulberry Street address, Sergeant Pakusch and Officer Mugler learned that a suspect matching the description given was being detained by other officers outside the rear of the house. Officers had also located a hand gun in a car parked in the rear of the Mulberry Street address.

Investigating officers, however, had not found a shotgun or rifle in the immediate area. Sergeant Pakusch questioned neighbors who informed him that a long gun had been taken into the house located at the Mulberry Street address. Sergeant Pakusch and Officer Mugler continued to search for a rifle or shotgun outside of the house when they observed Cheers walking up the back porch into the back door of the house.

Sergeant Pakusch and Officer Mugler followed Cheers into the house and informed Cheers they were looking for a shotgun. Pakusch asked Cheers if he had a shotgun and if he could look around the house. Cheers answered but Sergeant Pakusch did not know or understand what Cheers said. The officers proceeded to follow Cheers through the kitchen into the living room while searching for the gun.

Cheers sat down on the living room couch, and Sergeant Pakusch again informed Cheers that they were looking for a shotgun and asked Cheers if he had one. Cheers did not respond. Sergeant Pakusch looked underneath the couch Cheers was sitting on and pulled out a tray and a plate containing what Sergeant Pakusch believed to be cocaine.

Officer Mugler observed Cheers put something into his pocket and asked Cheers to reveal what he had put there. Cheers refused and Officer Mugler proceeded to pat-down Cheers for a possible weapon. The officer felt a hard object in Cheers' pocket which he removed and discovered what appeared to be a vial of cocaine. Police officers then arrested Cheers, sealed the house and obtained a search warrant to search the rest of the house.

Cheers was then charged with one count of drug abuse with a prior offense of violence specification. Subsequently, Cheers filed a motion to suppress the evidence seized by police officers on the ground that the warrantless search of his home was illegal. The trial court denied the motion to suppress. Cheers entered a plea of no contest and was convicted and sentenced.

It is from this judgment that Cheers raises the following three assignments of error:

"I. Officers Mugler and Pakusch violated the Fourth Amendment of the Constitution of the United States and Article I, Section 14 of the Constitution of the State of Ohio, by unlawfully entering and searching defendant-appellant's home.

"II. No extenuating circumstances were present to justify the unlawful entry and search of defendant-appellant's home by Officers Mugler and Pakusch.

"III. Even if Officers Mugler and Pakusch lawfully entered defendant-appellant's home, they violated the Fourth Amendment of the United States Constitution and Article I, Section 14 of the Constitution of the State of Ohio by not obtaining defendant-appellant's permission to search."

The third assignment of error will be addressed first by this court. As his third assignment of error, Cheers argues that the warrantless search of his home was made without his consent.

■ A warrantless search may be conducted if an accused gives "consent which is voluntary under the totality of all the surrounding circumstances." *State v. Childress* (1983), 4 Ohio St.3d 217, 4 OBR 534, 448 N.E.2d 155, paragraph one of the syllabus; *Schneckloth v. Bustamonte* (1973), 412 U.S. 218, 226, 93 S.Ct. 2041, 2047, 36 L.Ed.2d 854, 862. However, in the present case, there was no evidence that Cheers ever consented to the search of his home.

Sergeant Pakusch testified that upon entering Cheers' home, he told Cheers the officers were looking for a shotgun. Sergeant Pakusch then asked Cheers if the officers could look around for the gun. Although Cheers responded, Sergeant Pakusch testified he did not know or understand what Cheers said. Nevertheless, the officers proceeded with the search.

In that there is no evidence that Cheers ever consented to the search of his home, we need not reach the issue of voluntariness. Further, we cannot uphold the warrantless search of Cheers' home on the ground of consent. Accordingly, Cheers' third assignment of error is found well taken.

Cheers' first and second assignments of error will be addressed together. Cheers specifically argues that the warrantless search of his home and person was unconstitutional, and, therefore, the trial court erred in failing to grant his motion to suppress.

In *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 218, 524 N.E.2d 889, 891–892, the court held as follows:

" * * * Once a warrantless search is established, the burden of persuasion is on the state to show the validity of the search. *State v. Kessler* (1978), 53 Ohio St.2d 204, 207, 7 O.O.3d 375, 377, 373 N.E.2d 1252, 1255. This flows from the presumption that searches conducted outside the judicial process, without prior approval by judge or magistrate, are '*per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.' *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455 [91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576]; *Katz v. United States* (1967), 389 U.S. 347, 357 [88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585]." (Footnote omitted.)

In *State v. Bowe* (1988), 52 Ohio App.3d 112, 113–114, 557 N.E.2d 139, 140–142, the court noted the four exceptions to the warrant requirement which justify a warrantless search of a home: (1) an emergency situation, (2) search incident to an arrest, (3) "hot pursuit" and (4) easily destroyed or removed evidence.

The state does not argue, and there was no evidence presented at the hearing on the motion to suppress, that officers conducted the search of Cheers' home as incident to an arrest or while in hot pursuit of a suspect or that the evidence sought, a long gun, was easily destroyed or removed. Therefore, we are left to determine whether the search was properly conducted under the emergency situation exception to the warrant requirement.

The emergency situation exception to the warrant requirement is satisfied by a showing the police officers had "reasonable grounds to believe that some kind of emergency existed * * *." *State v. Hyde* (1971), 26 Ohio

App.2d 32, 34, 55 O.O.2d 52, 53, 268 N.E.2d 820, 821.  In *People v. Mitchell* (1976), 39 N.Y.2d 173, 177–178, 383 N.Y.S.2d 246, 248, 347 N.E.2d 607, 609, the court stated the three-part test used to establish the emergency situation exception to the warrant requirement:

"(1) The police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property.

"(2) The search must not be primarily motivated by intent to arrest and seize evidence.

"(3) There must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched."  (Footnote omitted.)  See, also, 2 LaFave, Search and Seizure (2 Ed.1987) 698–699, Section 6.6 and cases cited therein.

In the present case, police officers had little reason to believe that life or property was in immediate need of protection.  Officers were responding to a call for disorderly conduct involving a man with a rifle.  However, at the time Sergeant Pakusch and Officer Mugler entered Cheers' home, several other police officers had the man suspected of the disorderly conduct in custody in the back yard of Cheers' home.  There was no evidence that anyone inside Cheers' home was in need of aid or assistance.  There was no evidence that Cheers was armed, or posed any other danger either to officers or others as he entered his home.  In fact, Sergeant Pakusch testified that he knew Cheers did not have a long gun on him and felt no danger from Cheers as he followed Cheers through the kitchen and into the living room.

Further, there was evidence that the prime motivation of the officers entering the home was to locate the rifle or shotgun allegedly brandished by the suspect held in police custody outside of Cheers' home.  Sergeant Pakusch testified that his primary purpose in entering Cheers' home was to look for the long gun.  Officer Mugler testified that his sole purpose in entering Cheers' home was to locate the long gun.

Finally, police officers had been told that a long gun had been taken inside of Cheers' home.  However, there was no reason to believe that the mere presence of the gun in Cheers' home created an emergency situation.

Certainly police officers had the right to briefly detain Cheers and question him.  However, given the undisputed facts of this case, there is no reasonable basis to believe that an emergency situation existed that would justify the search of Cheers' home.  Therefore, we find, as a matter of law, that the search was unreasonable and in violation of the Fourth Amendment.  Accordingly, Cheers' first and second assignments of error are well taken.

On consideration whereof, the court finds that the defendant was prejudiced or prevent from having a fair trial and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this decision. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed and cause remanded.*

GLASSER, ABOOD and MELVIN L. RESNICK, JJ., concur.