2000 Utah Ct. App. 012

**SALT LAKE CITY, Plaintiff and Appellee,**

v.

**Steven DAVIDSON, Defendant and Appellant.**

No. 981508–CA.

Court of Appeals of Utah.

Jan. 27, 2000.

David S. Kottler, Salt Lake Legal Defender Association, Salt Lake City, for Appellant.

Richard W. Daynes, Salt Lake City Prosecutor's Office, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., and BENCH and WILKINS, JJ.[1]

## OPINION

GREENWOOD, Presiding Judge:

¶ 1 Defendant Steven Davidson appeals the trial court's denial of his motion to suppress evidence and subsequent conviction for possession of drug paraphernalia, a class B misdemeanor, in violation of Salt Lake City Code § 11.20.040.[2] We reverse.

## BACKGROUND

¶ 2 "In reviewing the trial court's ruling, we recite the facts in a light most favorable to the trial court's findings." *State v. Anderson*, 910 P.2d 1229, 1230 (Utah 1996).

¶ 3 On April 11, 1998, Officer Alvin Hedenstrom of the Salt Lake City Police Department was dispatched to 1129 Third Avenue on a report of a possible heroin overdose. Upon arrival, Officer Hedenstrom found paramedics and firefighters attending to an unconscious man who was lying face up on the kitchen floor. Defendant was also present in the kitchen.

¶ 4 When Officer Hedenstrom entered the kitchen, paramedics immediately asked him to remove defendant. Officer Hedenstrom complied and took defendant to an adjacent room where he obtained defendant's name and date of birth. Next, Officer Hedenstrom asked defendant for his address, which de-

---

1. Justice Wilkins heard the arguments in this case and participated in its resolution prior to his swearing-in as a member of the Utah Supreme Court.

2. Defendant entered a conditional guilty plea, preserving the right to appeal the suppression ruling. *See State v. Sery*, 758 P.2d 935, 937–38 (Utah Ct.App.1988).

fendant refused to provide. Defendant stated that he and the unconscious man did not live at the house. As Officer Hedenstrom was trying to determine where defendant lived, a paramedic yelled to Hedenstrom to ask defendant what drug the unconscious man had taken. Defendant refused to give any such information. He also refused to explain why he and the unconscious man were at the residence or answer the officer's question about the location of the homeowner.

¶ 5 When defendant remained uncooperative, Officer Hedenstrom demanded to see his identification, which, after several requests, defendant produced. At this time Officer Hedenstrom performed a cursory search of the premises for drugs or drug paraphernalia. The search did not yield any information to help the unconscious man. Officer Hedenstrom then told defendant that he was obstructing the officer's efforts to help the unconscious man. Defendant responded that he had rights and did not have to answer the officer's questions. Officer Hedenstrom then proceeded to arrest, handcuff, and search defendant. This search yielded a marijuana pipe and marijuana. Officer Hedenstrom testified that he searched defendant because it was standard procedure to search someone upon arrest and because he was hoping to find the drug paraphernalia used by the unconscious man so he could identify the substance the man had taken.

¶ 6 Defendant was charged with, among other things,[3] possession of drug paraphernalia, a class B misdemeanor, in violation of Salt Lake City Code § 11.20.040. He moved to suppress the marijuana and drug paraphernalia under both article I, section 14 of the Utah Constitution and the Fourth Amendment to the United States Constitution on the grounds that Officer Hedenstrom conducted an unlawful warrantless search. The trial court denied the motion, stating the warrantless search was justified under the emergency aid doctrine. Specifically, the trial court determined the search was justified by the need to determine on what substance the unconscious man had overdosed. In its ruling, the trial court stated that although no probable cause existed to search defendant, the emergency aid doctrine did not require a determination of probable cause. Defendant subsequently entered, and the trial court accepted, a conditional plea of guilty to the charge, reserving the right to appeal the suppression ruling. *See* Utah R. Crim P. 11(i); *Sery,* 758 P.2d at 937–38. Defendant appeals.

¶ 7 On appeal, defendant raises a single substantive issue: Did the trial court correctly rule that the warrantless search of defendant's person was justified under the emergency aid doctrine? Assuming we apply this doctrine, defendant argues the exception does not apply in this case because: (1) the officer was primarily motivated by his intent to arrest and seize evidence, in violation of the doctrine; (2) probable cause is required under this doctrine, and the trial court found probable cause was not present; and (3) this exception is limited to searches of persons who themselves are in need of medical attention, not bystanders.

## STANDARD OF REVIEW

¶ 8 We review the factual findings underlying the trial court's denial of defendant's motion to suppress under a clearly erroneous standard. *See State v. Anderson,* 910 P.2d 1229, 1232 (Utah 1996). We will determine there was clear error "only if the factual findings made by the trial court are not adequately supported by the record." *Id.* By contrast, we review "the trial court's conclusions of law based on such facts under a correctness standard, according no deference to the trial court's legal conclusions." *Id.*

## EMERGENCY AID SEARCH

¶ 9 Under the Fourth Amendment to the United States Constitution, searches conducted without warrants " 'are *per se* unreasonable ... subject only to a few specifically established and well-delineated exceptions.' " *State v. Ashe,* 745 P.2d 1255, 1258 (Utah 1987) (quoting *Katz v. United States,* 389

---

3. Defendant was also charged with possession of marijuana and furnishing false information to a police officer. These charges were later dismissed.

U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).[4] One such exception to the warrant requirement recognized by both the United States Supreme Court and Utah's appellate courts is exigent circumstances. *See Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290 (1978); *State v. Genovesi*, 909 P.2d 916, 921 (Utah Ct.App.1995).

■ ¶ 10 The emergency aid doctrine, sometimes referred to as the medical emergency doctrine, is a variant of the exigent circumstances doctrine. *See* Tracy A. Bateman, Annotation, *Lawfulness of Search of Person or Personal Effects under Medical Emergency Exception to Warrant Requirement*, 11 A.L.R. 5th 52, § 2[a] (1993). Bateman describes the emergency aid doctrine as follows:

> The medical emergency exception will support a warrantless search of a person or personal effects when [a] person is found in an unconscious or semiconscious condition and the purpose of the search is to discover evidence of identification and other information that might enhance the prospect of administering appropriate medical assistance, and the rationale is that the need to protect life or avoid serious injury to another is paramount to the rights of privacy....

*Id.* Several courts have also applied the emergency aid doctrine when a person is missing and feared to be injured or dead. *See, e.g., People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607 (1976).

Whether an emergency exists is fact intensive and the state has the burden "to prove that the exigencies of the situation make the course imperative." Annotation, 11 A.L.R. 5th, § 2[a] at 60.

■ ¶ 11 The emergency aid doctrine has not been specifically adopted or applied by a majority opinion of either of Utah's appellate courts, but was endorsed in a concurring opinion in *State v. Yoder*, 935 P.2d 534, 550 (Utah Ct.App.1997) (Greenwood, J., concurring in result). However, in *Provo City v. Warden*, 844 P.2d 360, 364 (Utah Ct.App. 1992), this court approved the closely related community caretaker doctrine under which a seizure does not violate the Fourth Amendment if certain criteria are satisfied.[5] In that case, a police stop of an automobile was declared lawful because the officer reasonably believed the motorist was contemplating suicide. *See id.* at 364–66.[6] The community caretaker doctrine and the emergency aid doctrine are based on similar rationales, as noted by the Kansas Court of Appeals, which, in endorsing the emergency aid doctrine, stated that the doctrine "reflects a recognition that the police perform a community caretaking function which goes beyond fighting crime." *State v. Jones*, 24 Kan. App.2d 405, 947 P.2d 1030, 1034 (1997).

■ ¶ 12 In *Yoder*, the concurring opinion advocated adopting a test for application of the emergency aid doctrine similar to that set forth in *Mitchell*, 383 N.Y.S.2d 246, 347 N.E.2d at 609. Pursuant to that test, a

---

4. The Fourth Amendment provides:
   The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
   U.S. Const. amend. IV.
   In defendant's motion to suppress he argued the warrantless search violated both the Fourth Amendment of the United States Constitution and article 1, section 14 of the Utah Constitution. However, in his brief defendant fails to discuss why our examination of the search under the Utah Constitution should differ from a traditional Fourth Amendment analysis. Because defendant fails to differentiate between the two constitutional provisions, we will consider his claim only

under the Fourth Amendment. *See City of Orem v. Henrie*, 868 P.2d 1384, 1387 (Utah Ct.App. 1994).

5. To assess the legitimacy of an alleged community caretaker stop, the trial court must determine, "First, did a seizure occur under the Fourth Amendment.... Second, based upon an objective analysis, was the seizure in pursuit of a bona fide community caretaker function.... Third, based upon an objective analysis, did the circumstances demonstrate an imminent danger to life or limb?" *Provo City*, 844 P.2d at 364.

6. Our opinion was affirmed on petition for certiorari by the Utah Supreme Court, stating the affirmance was "for the reasons stated by the court of appeals in its opinion." *Provo City v. Warden*, 875 P.2d 557, 557 (Utah 1994).

warrantless search is lawful under the emergency aid doctrine if the following requirements are met:

(1) Police have an objectively reasonable basis to believe that an emergency exists and believe there is an immediate need for their assistance for the protection of life.

(2) The search is not primarily motivated by intent to arrest and seize evidence.

(3) There is some reasonable basis to associate the emergency with the area or place to be searched. That is, there must be a connection with the area to be searched and the emergency.

*Yoder*, 935 P.2d at 550 (Greenwood, J., concurring in result). The *Mitchell* three-prong test has been followed by "[s]everal states, including Alaska, Arizona, Illinois, Nebraska, and North Dakota ... and it is often cited with approval by legal commentators." *Jones*, 947 P.2d at 1037; *see also State v. Cheers*, 79 Ohio App.3d 322, 607 N.E.2d 115, 117–18 (1992) (approving emergency doctrine but stating search illegal because no reasonable basis to believe emergency situation existed).

¶ 13 We believe the emergency aid doctrine is sound and consistent with case law from both the United States Supreme Court and our own supreme court. It validates and encourages law enforcement personnel to engage in activities that promote the safety and well-being of the citizens and also includes reasonable restrictions to avoid abuses. Therefore, we turn to the facts of this case and apply the *Mitchell* test as enunciated in the *Yoder* concurring opinion.

¶ 14 Defendant argues, among other things, that the third element is lacking in this case. Defendant asserts that the third element requires a finding of probable cause and that the trial court reached what was in essence a contrary finding that the "officer did not have probable cause to search." Defendant further argues that the trial court failed to find the necessary nexus between the emergency situation and the area searched—the defendant's person.

¶ 15 We believe there is a distinction between the usually understood definition of probable cause and the "reasonable basis" referred to in the third prong of the emergency aid doctrine. "In general, '[p]robable cause means a "fair probability that contraband or evidence of a crime will be found." ' " *Yoder*, 935 P.2d at 540 (citations omitted). The third prong of the emergency aid doctrine, on the other hand, "asks whether there was some reasonable basis to associate the place searched with the emergency." *Jones*, 947 P.2d at 1038. Thus, the search "of one individual is undertaken for the purpose of facilitating efforts to tend to the possible health needs of others." 3 Wayne R. LaFave *Search and Seizure* § 5.4(c) (1996). The difference between exigent circumstances and emergency aid situations is that in the former there is probable cause but no warrant, while in the latter there is no probable cause to justify a warrant and the purpose is not to arrest, search, or gather evidence. *See Jones*, 947 P.2d at 1037. Because this reasonable basis must approximate probable cause and is used to justify abrogation of Fourth Amendment rights, emergency aid searches should be " 'strictly circumscribed by [circumstances] which justify its initiation.' " *Mincey v. Arizona*, 437 U.S. at 393, 98 S.Ct. at 2413 (quoting *Terry v. Ohio*, 392 U.S. 1, 25–26, 88 S.Ct. 1868, 1882, 20 L.Ed.2d 889 (1968)).

¶ 16 In this case, there is no challenge to the trial court's conclusion that there was no probable cause to arrest or search defendant for evidence of criminal activity. The emergency situation was the medical condition of the man who was unconscious and thought to have overdosed on some substance. Under the emergency aid doctrine, the trial court was required to find that there was a reasonable probability defendant would have something on his person that would identify the substance used or ingested by the unconscious man. The trial court did not make such a finding, and we do not find support for it in the record before us. Officer Hedenstrom did not offer any testimony indicating defendant was likely to have drugs or paraphernalia on his person. Defendant's lack of cooperation, although undoubtedly frustrating to the officer, did not provide a basis for believing he possessed anything that would be helpful in treating the uncon-

scious man. It was, indeed, more likely that any such evidence would have been discarded before someone called paramedics and before Officer Hedenstrom's arrival or that an additional person or persons had been at the house earlier and left with anything that would identify the ingested substance. There was simply no finding by the trial court or evidence to strongly suggest that a search of defendant would have provided information helpful in treating the unconscious individual. Because there was not a sufficient nexus between the emergency and the area searched, we cannot justify the search of defendant under the rubric of the emergency aid doctrine.[7] Therefore, the trial court erred in denying defendant's motion to suppress. Consequently, we reverse defendant's conviction and remand for proceedings consistent with this opinion.

BENCH, Judge (concurring in result):

¶ 17 I am willing to recognize the medical emergency exception to the warrant requirement. I would limit it, however, to its intended and accepted scope, i.e., a search of the individual with the medical need.

¶ 18 In attempting to expand the scope of the exception to allow for searches of third parties, the main opinion replaces the word "the" with the word "a" in the following quotation, thereby changing its intended meaning: "The medical emergency exception will support a warrantless search of a person or personal effects when *the* person is found in an unconscious or semiconscious condition...." Tracy A. Bateman, Annotation, *Lawfulness of Search of Person or Personal Effects Under Medical Emergency Exception to Warrant Requirement*, 11 A.L.R. 5th 52, § 2[a] (1993) (emphasis added). The unaltered quotation indicates that the exception limits the search to the person and personal effects of "the" person in need of aid. It does not permit searches of third parties present at the scene.

¶ 19 The other secondary authority relied upon by the main opinion similarly recognizes that the exception is limited to searching only the person affected. *See* 3 Wayne R. LaFave *Search and Seizure* § 5.4(c) (1996) (stating that "if the police find a person unconscious or so seriously injured that questioning of him is impractical or unproductive, then it is reasonable for the police to search *that person* ") (emphasis added). The main opinion, however, attempts to bootstrap its argument for extending the exception to third parties by citing LaFave for the proposition that it is permissible to search "one individual ... for the purpose of facilitating efforts to tend to the possible health needs of others." *Id.* The main opinion fails to point out that this quotation immediately precedes a disclosure that such an aberration is found in only *four states* and that those states have extended the doctrine *by way of a statute* requiring that a person charged with sexual assault be tested for AIDS.[1] We do not have such a statute in Utah and, in any event, these statutes do not allow the search of third parties present at the scene of an apparent drug overdose.

¶ 20 I am aware of no other appellate court in the land that has ever expanded or applied the exception to third parties in situations like the instant case. This is confirmed by the dissent's concession that there are "no cases from other jurisdictions which extend the emergency aid exception to searches of persons who do not need assistance."

¶ 21 Furthermore, in urging the adoption of the medical emergency exception in general, the dissent "recognize[s] that this exception would have to be strictly construed so as to keep the warrantless intrusion as limited as possible." However, instead of limiting the scope of the search to the person in need, which is the universally accepted practice, the dissent contends that this case warrants the unprecedented expansion of the exception "to areas and persons immediately connected with the person in need of emergency assistance." Expanding the scope of the ex-

---

7. *Because of our disposition on this point, we do not address defendant's other arguments.*

1. *See* Cal.Penal Code § 1524.1 (West Supp.1990); Colo.Rev.Stat. Ann. § 18–3–415 (West Supp.

1989); Ga.Code Ann. § 17–10–15(b) (Supp. 1996); Tex.Code Crim. P. Ann. art. 21.31. (West 1989).

ception to allow searches of third parties in this way will logically lead to unconstitutional searches of all persons present at the scene of an apparent drug overdose or other similar medical emergency.

¶ 22 In sum, the medical emergency exception allows only for the search of the person and personal effects of the one in need of aid. It does not permit the search of third parties present at the scene. The trial court therefore erroneously applied the exception in this case, and that is the only basis urged for affirmance. I therefore agree that defendant's conviction must be reversed.

WILKINS, Judge, (dissenting):

¶ 23 I respectfully dissent. I would affirm the trial court's denial of defendant Davidson's motion to suppress the evidence.

¶ 24 The Fourth Amendment to the United States Constitution and our state constitutional counterpart prohibit all unreasonable searches and seizures. *See State v. Genovesi,* 909 P.2d 916, 921 (Utah Ct.App.1995); *State v. Pursifull,* 751 P.2d 825, 826 (Utah Ct.App.1988). "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Pursifull,* 751 P.2d at 826 (quoting *Mincey v. Arizona,* 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290 (1978)) (additional citations omitted); *see State v. Montoya,* 937 P.2d 145, 149 (Utah Ct.App.1997) (stating "warrantless searches are per se unreasonable unless undertaken pursuant to a recognized exception to the warrant requirement") (citations omitted). One such exception recognized by both the United States Supreme Court and this court, under the rubric of exigent circumstances, is the emergency aid doctrine. *See Mincey,* 437 U.S. at 392–93, 98 S.Ct. at 2413 (recognizing warrantless entries and searches when person within premises needs immediate

aid); *Genovesi,* 909 P.2d at 921 (approving warrantless entry and search in emergency situation); *Pursifull,* 751 P.2d at 826 (approving an emergency exception to warrant requirement); *see also State v. Yoder,* 935 P.2d 534, 550 (Utah Ct.App.1997) (Greenwood, J., concurring in result) (approving of emergency aid doctrine and delineating requirements of doctrine as applied in other states).[1]

¶ 25 Under the emergency aid doctrine, police officers may conduct limited, warrantless searches in emergency situations—such as when police "reasonably believe that a person ... is in need of immediate aid." *Mincey,* 437 U.S. at 392, 98 S.Ct. at 2413; *see Pursifull,* 751 P.2d at 826–27 (concluding warrantless search is objectively reasonable under the Fourth Amendment when law enforcement officers are presented with an emergency situation, such as when they "have a reasonable belief that a person ... needs immediate assistance"). Courts have upheld warrantless searches of persons in emergency situations for humanitarian reasons, namely, to protect life or avoid serious injury to another. *See Mincey,* 437 U.S. at 392–93, 98 S.Ct. at 2413 (stating " '[t]he need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.'") (citation omitted); *State v. Wright,* 804 P.2d 866, 869–70 (Colo.1991) (stating "need to protect or preserve life ... is paramount to the right of privacy"); Tracy A. Bateman, Annotation, *Lawfulness of Search of Person or Personal Effects Under Medical Emergency Exception to Warrant Requirement,* 11 A.L.R.5th 52 (1993).

¶ 26 While both the United States Supreme Court and this court have recognized the emergency aid doctrine, neither the Supreme Court nor the majority of either Utah appellate court have previously set forth the requirements underlying the doctrine. However, other courts have upheld warrantless searches of persons under the emergency aid doctrine if:

---

1. The emergency aid doctrine has been accepted in numerous federal and state cases. *See, e.g., State v. Prober,* 98 Wis.2d 345, 297 N.W.2d 1, 9 n. 12 (1980), *rev'd in part on other grounds* by *State v. Weide,* 155 Wis.2d 537, 455 N.W.2d 899 (1990) (citing cases); 3 Wayne R. LaFave, Search and Seizure §§ 5.4(c), 6.6(a), 7.4(f) (3d ed.1996) (citing cases where warrantless search permitted to aid person in need of assistance).

(1) Police have an objectively reasonable basis to believe that an emergency exists and believe there is an immediate need for their assistance for the protection of life. (2) The search is not primarily motivated by intent to arrest and seize evidence. (3) There is some reasonable basis to associate the emergency with the area or place to be searched. That is, there must be a connection with the area to be searched and the emergency.

*See State v. Yoder*, 935 P.2d 534, 550 (Utah Ct.App.1997) (Greenwood, J., concurring in result) (approving of emergency aid doctrine and articulating elements applied in other jurisdictions); (*People v. Mitchell*, 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (1976)) (setting forth nearly identical requirements as listed above); *see also* LaFave, Search and Seizure at § 6.6(a); John F. Decker, *Emergency Circumstances, Police Responses, and Fourth Amendment Restrictions*, 89 J.Crim. L. & Criminology 433, 457–529 (Winter 1999) (articulating prongs of emergency doctrine and citing cases).

¶ 27 I would adhere to the emergency aid doctrine as set forth by the United States Supreme Court in *Mincey* and this court in *Genovesi* and *Pursifull*. I would also adopt the three-prong test articulated above and apply it here. Within these confines, to do so would comport with jurisdictions that have held that the emergency aid doctrine will support a warrantless search of a person when a person is found in an unconscious or semiconscious condition and the primary purpose of the search is to discover evidence of identification or other information that may enhance the prospect of administering appropriate medical assistance. *See, e.g., Wright*, 804 P.2d at 869. While I recognize the invasiveness of this personal intrusion, I would adopt this emergency exception simply because I would not want to deter law enforcement officers from rendering aid to those persons in emergency situations. In so applying this doctrine, however, I recognize that this exception would have to be strictly construed so as to keep the warrantless intrusion as limited as possible. *See Mincey*, 437 U.S. at 393, 98 S.Ct. at 2413, ("a warrantless search must be 'strictly circum-

scribed by the exigencies which justify its initiation' ") (citation omitted); *Genovesi*, 909 P.2d at 921 (holding police may conduct limited, warrantless search in emergency situation); *Pursifull*, 751 P.2d at 827. Even given my suggested application of this doctrine, the question remains whether the trial court correctly applied the emergency aid doctrine in this case. I believe it did.

### 1. *Emergency Situation*

¶ 28 Defendant does not contest the first factor of the emergency aid doctrine—that the police must have objective reasonable grounds to believe that an emergency exists and believe there is an immediate need for their assistance. I agree that this element is satisfied. Certainly Officer Hedenstrom's belief that an emergency existed and that there was an immediate need for his assistance was objectively reasonable. The circumstances of this case presented a life-threatening emergency. Paramedics needed information about the drug the victim had ingested to determine how to treat him. Defendant was the only remaining and unexplored source for that critical information, and he refused reasonable requests to assist.

### 2. *Motivation of Officer*

¶ 29 Defendant challenges the court's application of the second prong of the emergency aid doctrine—that "[t]he search must not be primarily motivated by [an] intent to arrest and seize evidence." *Yoder*, 935 P.2d at 550 (citation omitted) (Greenwood, J., concurring in result); *see also Mitchell*, 383 N.Y.S.2d 246, 347 N.E.2d at 610 (stating "the protection of human life or property in imminent danger must be the motivation for the search rather than the desire to apprehend the suspect or gather evidence for use in a criminal proceeding"). Defendant contends that the emergency aid exception does not apply in this case because Officer Hedenstrom's *primary* motivation was his intent to arrest and seize evidence. I disagree.

¶ 30 The trial court did not find the primary intent of the officer as one of arrest and seizure, but rather found that Officer Hedenstrom's *main* concern was to assist the unconscious man. The court stated:

[T]he officer['s] motivation and the opinion of the court was to ascertain what substance the [unconscious man] ... was under the influence of.... The reason for the search was[,] in the opinion of the court, a desire to ..., obtain information that he was not obtaining any other way. And [ ], the reason for the [ ] search, the motivation ... was a health[,] safety[,] and welfare [ ] circumstance.

### 3. *Scope of Search*

¶ 31 A. Defendant next claims the trial court misapplied the final prong of the emergency aid doctrine. He argues that probable cause is required under the emergency aid doctrine, and because the court did not conclude the search was supported by probable cause, the search was unlawful. Again, I disagree.

¶ 32 The United States Supreme Court has dispensed with the probable cause requirement in decisions involving essentially non-criminal searches,[2] apparently because traditional probable cause[3] is inapplicable in these circumstances. *See Ybarra v. Illinois,* 444 U.S. 85, 96, 100 S.Ct. 338, 344, 62 L.Ed.2d 238 (1979) (holding circumstances of search did not approach those in which Supreme Court has held search could be conducted on less than probable cause); *South Dakota v. Opperman,* 428 U.S. 364, 370 n. 5, 96 S.Ct. 3092, 3097 n. 5, 49 L.Ed.2d 1000 (1976) (stating "[t]he standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures.... The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions."); *Cady v. Dombrowski,* 413 U.S. 433, 447–48, 93 S.Ct. 2523, 2530–31, 37 L.Ed.2d 706 (1973); Decker, *Emergency Circumstances, Police Responses, and Fourth Amendment Restrictions,* 89 J.Crim. L. & Criminology at 446; Roberts,

Note, *The Emergency Doctrine, Civil Search and Seizure and the Fourth Amendment,* 43 Ford. L.Rev. at 578–79. The reason for this is simple. Unlike criminal searches, non-criminal searches are not based on law enforcement objectives—to detect or solve a specific crime. Instead, non-criminal searches are based on an officer's community caretaking functions that, for a time, supersede their law enforcement objectives. *See Opperman,* 428 U.S. at 369 n. 4, 96 S.Ct. at 3097 n. 4. An officer's focus on assisting those in need of medical attention, as opposed to gathering evidence of a crime, avoids the necessity of probable cause to arrest or search, or obtaining a search or arrest warrant.

¶ 33 Traditional probable cause is not required under the emergency aid doctrine. *See Yoder,* 935 P.2d at 550 (Greenwood, J., concurring in result) (stating "[t]here must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" and stating that while defendant's behavior "did not rise to probable cause," it provided a "'reasonable basis, approximating probable cause'"). Rather, to justify a search under this doctrine, there must be "a nexus between the emergency situation and [the area to be searched]." *Id.; see also Prober,* 297 N.W.2d at 10 (stating "there must be a direct relationship between the area to be searched and the emergency") (quoting *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 610 (1976)). As such, the trial court did not err in concluding the emergency aid doctrine does not require a probable cause determination.

¶ 34 B. Utah's appellate courts have not previously indicated whether the emergency aid doctrine is limited to searches of persons who themselves are in need of aid, nor are there cases from other jurisdictions which

---

**2.** *See* Melinda Roberts, Note, *The Emergency Doctrine, Civil Search and Seizure, and the Fourth Amendment,* 43 Ford. L.Rev. 571, 572–73 (1975) (defining non-criminal search as an "intrusion [that] is unaccompanied by an intention to seek out criminal activity").

**3.** In *State v. Wright,* 977 P.2d 505, 507 (Utah Ct.App.1999) (citations omitted) we stated:

Probable cause is present when " ' "the facts and circumstances within [the officers'] knowledge and of which they ha[ve] reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that" an offense has been or is being committed.' "

extend the emergency aid exception to searches of persons who do not need assistance. Admittedly, courts upholding warrantless searches under the emergency aid doctrine have generally done so when the search was performed on persons who themselves needed assistance or that person's personal effects. *See generally* Tracy A. Bateman, Annotation, *Lawfulness of Search of Person or Personal Effects Under Medical Emergency Exception to Warrant Requirement,* 11 A.L.R.5th 52 (1993). However, when the facts present a circumstance such as in this case, extension of the doctrine to areas and persons immediately connected with the person in need of emergency assistance is warranted, in my opinion.

¶ 35 When a search is performed in an emergency situation, the area searched must have a close connection to the emergency. *See Yoder,* 935 P.2d at 550. Specifically, there must be a nexus between the emergency situation and the area or place to be searched. *See id.* (noting defendant's behavior and demeanor and proximity of missing child's clothing to defendant's apartment justified search of defendant's apartment); *see Prober,* 297 N.W.2d at 11 (holding "emergency search may not extend to areas unrelated to the emergency").

¶ 36 The record indicates that Officer Hedenstrom did not see defendant in possession of drugs or drug paraphernalia before the search, and defendant made no statements cluing police that he was in possession of anything that could have aided the unconscious man. However, several facts lead to the conclusion that the search of defendant was reasonable in scope under the specific facts of this case. First, defendant was the only person present on the premises with the unconscious man when Officer Hedenstrom arrived at the scene, and therefore the only one who could have provided any information to alleviate the emergency. This was not a situation, as defendant would have us believe, in which defendant had no connection to the unconscious man and was present at the scene of the emergency as a mere onlooker, such as a passerby who stops to observe an auto accident. Rather, defendant testified that the unconscious man was his friend and that he was giving mouth-to-mouth resuscitation to him when paramedics arrived. Second, the extent of the emergency was one which seriously threatened the unconscious man's life, requiring the police to take immediate action. Third, the search of defendant was conducted *after* police had already searched the house for drugs and drug paraphernalia to no avail and had no other avenue of information to help the unconscious man. Finally, defendant refused reasonable requests for information from the officer. For these reasons, I would reject defendant's argument that the search of defendant was improper in scope and agree with the trial court that the search of defendant was justified under the emergency aid doctrine.