OPINION
Defendant was indicted for possessing over ten grams but less than twenty-five grams of crack cocaine. R.C. 2925.11(A). He entered a plea of not guilty. Defendant filed a motion to suppress the evidence, which the trial court overruled following a hearing. Thereafter, Defendant entered a plea of no contest to the charge, was found guilty, and was sentenced by the trial court to two years imprisonment, to be served consecutively to case 2001-CR-530. Defendant has timely appealed to this court from his conviction and sentence. He presents two assignments of error for our review:
 FIRST ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE DERIVED FROM THE WARRANTLESS ENTRY WHEN NO EXIGENT CIRCUMSTANCES JUSTIFIED THE ENTRY INTO THE PREMISES AND THE SUBSEQUENT SEARCH OF APPELLANT."
 SECOND ASSIGNMENT OF ERROR "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE DERIVED FROM A WARRANTLESS ENTRY BY POLICE OFFICERS WHEN THE EXIGENT CIRCUMSTANCES WERE CREATED BY THE POLICE OFFICERS."
The evidence presented at the suppression hearing demonstrates that on the evening of July 18, 2000, Dayton police were investigating drug activity at an apartment building located at 420 Cherrywood, having received complaints from the owner that building and local residents. Two detectives located in a vacant apartment in a nearby building watched people coming and going from 420 Cherrywood. The detectives observed several people enter that building, stay but three to five minutes, and then leave. They later testified that such conduct is indicative of drug activity.
The detectives used their police radio to contact other officers in the area who were working a "tail car." The surveillance detectives would describe an individual and his vehicle when it left 420 Cherrywood, and the "tail car" would then follow those people until uniformed crews in marked vehicles could effect a traffic stop. Several vehicles were stopped that evening after leaving 420 Cherrywood, which resulted in three arrests for possession of crack cocaine. Two of the people arrested told police that they bought their crack from an African-American male named "Erkel" in apartment number four at 420 Cherrywood. Police knew from previous arrests in this area that "Erkel" was Defendant, Darnell L. Barber.
Later that evening, police decided to conduct a "knock and advise" at 420 Cherrywood, Apartment 4. This is a police procedure in which officers knock on a residence door, explain to the occupants of the residence that they are investigating complaints about drug activity at that location, and request consent to search.
Shortly after midnight, Det. Elworth, a plainclothes detective accompanied by several uniformed officers, knocked on the door at Apartment 4. Someone inside yelled: "Yeah, who is it?" Det. Elworth replied: "Ricky." Defendant then opened the door, whereupon Det. Elworth identified himself as a Dayton police officer. Defendant could see the uniformed police officers with Det. Elworth, and he immediately backed up inside the apartment and began to reach behind his back with his left hand. Based upon his experience in investigating drug activity, Officer Bergman, one of the uniformed officers with Det. Elworth, knew that guns are often present where drugs are sold and that they are frequently hidden behind a person's back in the waistband area. Fearing that Defendant might be reaching for a gun, Officer Bergman and other officers entered the apartment, grabbed Defendant's hands, and after restraining him, patted Defendant down for weapons for the safety of the officers.
Officer Bergman began his pat down frisk for weapons at the waistband area of Defendant's mid-back, the area where Defendant had reached with his hand. Officer Bergman felt a rock like object, larger than a golf ball, which he testified that he immediately recognized as crack cocaine by the way it felt. Officer Bergman removed that object from Defendant's waistband. The object turned out to be a rock of crack cocaine weighing twenty-two or twenty-three grams. Officer Bergman then arrested Defendant for possession of drugs.
In overruling Defendant's motion to suppress the cocaine recovered from his person, the trial court concluded that the warrantless entry into the apartment by police was justified by the exigent (emergency) circumstances doctrine. Police reasonably believed that Defendant was reaching for a gun and posed a threat to their safety. The trial court further concluded that the pat down search of Defendant for weapons was lawful because police had a reasonable, articulable suspicion that Defendant was armed and posed a danger to them. Terry v. Ohio (1968), 392 U.S. 1. Finally, the trial court concluded that recovery of the crack cocaine from Defendant's pants was consistent wit the "plain feel" doctrine and was also lawful. Minnesota v. Dickerson (1993), 508 U.S. 36.
The State argues that because the evidence fails to demonstrate that Defendant lived at the apartment in question, that he was a regular guest there, that he was an overnight guest at the time of this search, or that he kept any personal belongings at that apartment, Defendant has failed to meet his burden of establishing a reasonable expectation of privacy in that apartment. Accordingly, he lacks standing to challenge the entry into that apartment by police. State v. Gordon (March 29, 1996), Clark App. No. 95-CA-48, unreported.
Neither party raised the issue of standing during the suppression hearing, and the trial court did not address the issue in its decision. We decline to do so for the first time on appeal. More importantly, regardless of whether Defendant had standing to challenge the entry into the apartment by police, he clearly had standing to challenge the seizure and search of his person. State v. Sims (1998), 127 Ohio App.3d 603.
Warrantless searches and seizures are per se unreasonable under the Fourth Amendment subject to only a few well-established exceptions. Katzv. United States (1967), 389 U.S. 347. One such exception is emergency or exigent circumstances. This doctrine justifies a warrantless entry into a residence in a variety of situations, including when someone inside poses a danger to the police officer's safety. Minnesota v.Olson (1990), 495 U.S. 91, 100; State v. Scott M (1999),135 Ohio App.3d 253, 258-259; State v. Cheers (1992), 79 Ohio App.3d 322,326. Furthermore, whenever police have a reasonable, articulable suspicion that a person whom they are investigating may be armed and poses a danger to them or to others, the officers are entitled for their own safety to conduct a search of the suspect's person for weapons.Terry v. Ohio (1968), 392 U.S. 1.
Notwithstanding the fact that the police officers in this case likely could have obtained a search warrant for this apartment, the legality of their conduct in entering that apartment and searching Defendant's person for weapons must be judged on the "reasonable suspicion" standard prescribed by Terry, supra. As the trial court below found, the totality of the facts and circumstances in this case, as viewed by the officers on the scene, taking into account their training and experience, State v.Andrews (1991), 57 Ohio St.3d 86, clearly gives rise to a reasonable, articulable suspicion that Defendant was armed and posed a danger to the safety of the officers.
The officers testified that guns are frequently found where drugs are sold. Some of the people stopped by police after coming from this apartment told police that they had just purchased crack cocaine from a man there. The officers also testified that guns are often hidden behind the back, in the small of the back near the waistband.
Police were investigating drug activity when they knocked on the door of this apartment. After police knocked and Defendant opened the door and saw the police officers, his conduct in immediately backing up inside the apartment and reaching behind his back with his hand created a reasonable suspicion that he was armed and posed a danger to the safety of the officers. That exigency or emergency circumstance justified the warrantless entry into the apartment by police to search Defendant's person for the weapon they suspected he was about to use on them. While the Fourth Amendment requires that residential thresholds and the sanctity of the home be respected, that is reasonably overcome by threats to the officer's safety that a suspect's conduct creates.
While the exigency here ultimately resulted from the investigative conduct of the officers, they did not create that exigency that justified their warrantless entry. Defendant did that by his own voluntary conduct. Moreover, the scope of the intrusion in this case was strictly limited to the exigency that justified it in the first place.
In the course of patting down Defendant for weapons, in the mid-back area near his waistband, where Defendant had reached with his hand, Officer Bergman felt a large rock like object that he immediately recognized as crack cocaine from his previous experience and the way the object felt. Probable cause to believe that the object which Officer Bergman felt during his lawful pat down of Defendant for weapons was crack cocaine, was required before Officer Bergman could lawfully remove that object from Defendant's pants. Minnesota v. Dickerson, supra. That standard was satisfied in this case by Officer Bergman's "plain feel" claim, which the trial court chose to believe. Defendant's Fourth Amendment rights were not violated by the seizure of crack cocaine from his person. Without question, Defendant's claim of unlawful conduct on the part of the police is fueled in part by the officers' conduct leading up to their entry into the apartment. The so called "knock and advise" procedure, and Det. Elworth's failure to immediately identify himself as a police officer when a person inside the apartment asked who was at the door, is confrontational by design, and seems contrived to provoke acquiescence to the officers' requests to enter and search the premises. Nevertheless, these actions do not render the search and seizure of Defendant unreasonable for Fourth Amendment purposes. Rather, they are examples of what Justice Jackson termed "the often competitive enterprise of ferreting out crime." Johnson v. United States (1948), 333 U.S. 10,14. Aggressive they may be, but illegal they are not.
The assignments of error are overruled. The judgment of the trial court will be affirmed.
WOLFF, P.J. and BROGAN, J., concur.